NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| In re: | : | Bankruptcy Case No. 08-12305 |
| | : | |
| DAVID LEROY BEERS | : | Chapter 13 |
| | : | |
| Debtor. | : | |
| | : | |
| | : | Hearing Date: January 14, 2009 |
| | : | Document Number 73 |

**APPEARANCES**

OPINION

Eric L. Leinbach, Esquire
1603 Butler Street
Easton, PA 18042
Attorney for Debtor

James M. McGovern, Esquire
Lomurro, Davison, Eastman & Munoz, PA
100 Willow Brook Road - Building 1
Freehold, NJ 07728
Arguing on behalf of Joel A. Ackerman, Zucker, Goldberg & Ackerman,
Attorney for LaSalle National Bank, et al c/o EMC Mortgage Corporation

Erik D. Collazo, Esquire
1 AAA Drive
Robbinsville, NJ 08691
Standing Chapter 13 Trustee

David Leroy Beers ("Debtor") filed the within motion for sanctions against Joel Ackerman and Zucker Goldberg & Ackerman ["EMC's Counsel" or "the Ackerman Firm"] on September 17, 2008. That seems like a long time ago, but the genesis of the dispute between these parties goes back considerably further. On March 26, 2008 the Debtor filed a plan in this case (he had filed several previous cases) that proposed to pay EMC Mortgage[1] $25,000.00 on account of estimated outstanding arrearages. The Chapter 13 Trustee objected to the Plan, but EMC did not. In response to the Trustee's objection, the Debtor filed a Modified Chapter 13 plan on April 28, 2008. The Modified Plan proposed to pay EMC $30,000 on account of arrearages. EMC filed an objection to the Modified Plan [Doc. 41] to the extent that the Modified Plan proposed to cured an amount less than the amount due than set forth in its Proof of Claim. The objection did not set forth the amount of the claim. The Proof of Claim itself, however, indicated a total amount due of $88,682, with arrearages totaling $33,290. The arrearage claim included $6,280.14 in pre-petition attorney fees and costs, as well as $10,616.05 in escrow advances. On June 3, 2008, the Debtor filed another modified Chapter 13 plan, again calling for the cure of a $30,000.00 arrearage to EMC.

On June 13, 2008, the Debtor filed an objection to the Proof of Claim filed by EMC [Doc. 49]. The Debtor's objection was premised on the fact that EMC did not attach a recorded copy of the mortgage, and referenced but did not attach an adjustable rate rider and other addenda and schedules. The Debtor argued that the filed Proof of Claim gave insufficient itemization to enable calculation of the interest, late charges, escrow, pre-petition attorney fees and "other" assessments. The Debtor asserted similar problems with the calculation of the arrearages. EMC filed an uncertified letter response. The Court heard the objection to the EMC claim on July 16, 2008. The

---

[1] EMC Mortgage Corporation as servicer for LaSalle National Bank

2

court ruled that EMC was not entitled to rely on the prima facie validity of its proof of claim and rejected EMC's legal argument that the objection to claim was an improper attempt to modify its mortgage. The Court nonetheless adjourned the hearing for further submissions because the Debtor's counsel was unable as of that date to explain how he arrived at the amount that he asked to court to put in his proposed order fixing the claim. On July 18, 2008, Debtor's counsel submitted an uncertified letter response to the Court's inquiry setting forth how the amount the Debtor claimed was due was calculated. On July 25, 2008, EMC also filed supplemental papers, indicating for the first time that the bulk of its claim was based on a judgment entered by the state court on May 31, 2006. It also addressed some, but not all, of the deficiencies identified by the Court at the previous hearing, and raised certain other issues.

On August 1, 2008, the Debtor filed a motion seeking a determination that the value of the collateral at $85,000. EMC was served with that motion, but again did not object. On August 28, 2008, the Court entered the order requested and fixed the value of the property at $85,000.

In the meantime, on August 27, 2008, the Debtor also filed a brief responding to the additional documentation submitted by EMC and supporting its objection to the EMC claim [Doc. 63]. The Debtor's brief set forth at length why the submissions by EMC remained deficient or, in some cases erroneous.[2] EMC returned fire on September 3, 2008 [Doc. #68], but limited its response to the issue of merger. After wading through all of that, the Court rejected the Debtor's position on the merger doctrine, but granted the Debtor's motion on the basis that EMC had presented "zero admissible proof" in support of its claim, and entered an order fixing EMC's claim

---

[2] For example, the claim contained an assessment for a deposit for execution of a sheriff's sale on April 24, 2006 while the newly surfacing judgment was not entered until May 31, 2006

3

on September 11, 2008.

Apparently that got EMC's attention. EMC moved for reconsideration on September 16, 2008. Evidently disgusted by what it took to get EMC's attention, the Debtor filed the motion for sanctions at issue here on September 17, 2008. The Debtor filed opposition to the motion for reconsideration on September 26, 2008.[3] The Debtor filed several submissions in opposition to the motion to reconsider and on September 26, 2008 also supplemented his motion for sanctions. The court denied reconsideration on October 9, 2008, and went on to confirm the plan based on the order fixing EMC's claim.

EMC at long last, on October 11 and 21, 2008, ordered transcripts of all of the hearings related to the objection to its claim. Those transcripts are incorporated as part of this record.

EMC filed a brief in opposition to the motion for sanctions on December 11, 2008, and the Debtor replied on December 14, 2008. The Court took argument on January 14, and reserved decision on both the motion for sanctions and the request for approval of fees.

**Discussion**

The Debtor moves for sanctions based on 28 U.S.C. § 1927. That section provides that a court may impose sanctions on:

> [a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

---

[3] The Debtor moved to modify the name of the creditor listed in the September 11, 2008 order to include both EMC and LaSalle National Bank. Debtor's counsel also filed a fee application. Although EMC objected to the fee application, believing that it had something to do with its alleged liability on the motion for sanctions, this docket activity is really nothing more than a side show to the matter at hand.

4

28 U.S.C. § 1927. Bankruptcy courts have the power to impose sanctions against attorneys under § 1927. In Re Schaefer Salt Recovery, Inc., 542 F.3d 90 (3d Cir. 2008). In order to do so, they are required to find that "an attorney has (1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the proceedings; and (4) doing so in bad faith or by intentional misconduct." In re Prudential Ins. Co. America Sales Practice Litig., 278 F.3d 175, 188 (3d Cir. 2002). Indeed, the conduct to be sanctioned must be of an "egregious nature, stamped by bad faith[,]" and not because of "misunderstanding, bad judgment, or well-intentioned zeal." Lasalle National Bank v. First Connecticut Holding Group, LLC., 287 F.3d 279, 289 (3d Cir. 2002).

"Bad faith" is governed by a subjective standard. Martin v. Brown, 63 F.3d 1252, 1263, n.14 (3d Cir. 1995). A court may consider whether the attorney has misrepresented facts before the court or unfairly manipulated the Bankruptcy Code. In re Johnson, 708 F.2d 865, 868 (2d Cir. 1983). The Third Circuit has noted that "what would be indicative of bad faith . . . would be some indication of an intentional advancement of a baseless contention that is made for an ulterior purpose, *e.g.*, harassment or delay." Baker v. Cerberus, 764 F.2d 204, 223 (3d. Cir. 1985); *see also,* Keller v. Mobil Corp., 55 F.3d 94, 99 (2d Cir. 1995) (for sanctions to apply, an attorney's conduct must be "so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." (internal quotation marks omitted)).  Negligence does not trigger willful bad faith. Zuk v. E. Pa. Psychiatric Inst. of the Med. Coll. of Pa., 103 F.3d 294, 298 (3d Cir. 1996).

There is little doubt on the record that the first three of the factors to be considered by the Court pertain here. The papers submitted by EMC's counsel were so deficient and inconsistent with each other that they unquestionably multiplied proceedings and the necessity for counsel to appear,

5

and that they did so in an unreasonable and vexatious manner, thereby increasing the cost of the proceedings. EMC counsel's argument that the initial hearing was adjourned to accommodate Debtor's counsel flies in the face of the transcript, wherein after listing the myriad deficiencies in EMC's submissions, the Court stated "I would be happy, actually, to grant the Debtor's motion but for the fact that the Debtor asked me to reduce the claim to a particular amount and I don't think that has been justified, either." [Doc. 91] It was only after this Court allowed the Debtor to supplement the record and provide the basis for its calculation of the claim amount and grudgingly allowing EMC a second opportunity to respond to the objections filed by the Debtor, that EMC's counsel submitted papers, also woefully deficient, but based on an entirely new theory. In fact, at the three hearings on this matter, three separate individuals presented oral argument on behalf of EMC and their positions were so discordant it was sometimes hard to believe that counsel had read any of the papers submitted, even those submitted on behalf of their own client. EMC's counsel offer no excuse why it failed to object to the first plan or to the motion to fix the value of the collateral. Sadly, this is only slightly more egregious than the manner in which EMC's counsel seems to comport itself in many Chapter 13 proceedings before this court.

The problem for the Debtor arises with the requirement that EMC's counsel has acted in bad faith or by intentional misconduct. The manner in which the Ackerman Firm handled this case was terribly inefficient and burdensome for all of the parties involved in the case. It was wasteful of the resources of both the court and counsel. It is an example of the corrosive effect that the Ackerman Firm's manner of conducting litigation has on the Bankruptcy system in this district as a whole. It is textbook unprofessional conduct. It does not, however, involve misrepresentation to the court or evince a purpose to unfairly manipulate the Bankruptcy Code. It does not give any indication of

having been motivated by an attempt to gain any sort of litigation advantage or other ulterior purpose. In fact, the Court's own observations of the manner in which the Ackerman Firm conducts its business in this and other cases belies any intention to gain a particular advantage in a particular case. The Firm's conduct is simply monumentally inconsiderate of the time of their adversaries and the court.

As frustrating as EMC's counsel's conduct was, the Court cannot award sanctions under 28 U.S.C. § 1927, because it cannot find willful misconduct.

There are other bases on which a Bankruptcy Court can sanction errant counsel. For example, the Court also has sanction power under Rule 9011 of the Federal Rules of Bankruptcy Procedure. That rule permits individual sanctions when an attorney files papers with the court without "information and belief formed after reasonable inquiry [that they are] well grounded in fact and [are] warranted by existing law or a good faith argument for the extension, modification, or reversal or existing law, and that [they are] not interposed for any improper purpose, such as to harass or cause unnecessary delay or needless increase in the cost of litigation." Garr v. U.S. Healthcare, 22 F.3d 1274, 1278 (3d Cir. 1994). There is no need to find bad faith when imposing 9011 sanctions. Fellheimer, Eichen & Braverman, P.C. v. Charter Technologies, Inc., 57 F.3d 1215, 1225 (3d Cir. 1995). Instead, the court needs "only a showing of objectively unreasonable conduct." Id.

Due process requires that the target of a sanctions motion be given notice and a meaningful opportunity to be heard prior to sanctions issuing. *See,* Cook v. American Steamship Co., 134 F.3d 771, 774-75 (6th Cir. 1998). In giving notice before sanctions are imposed, this "usually require[s] notice of the precise sanctioning tool that the court intends to employ." Fellheimer, 57 F.3d at 1225.

Toward that end, the Court notes that Rule 9011 states that a request for sanctions may not be:

> filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected ....

Fed. R. Bankr. Proc. 9011(c)(1)(A). This so-called "safe harbor" protection was not afforded to the Ackerman Firm here, so the Debtor may not avail himself of 9011 as a sanctioning tool. The Third Circuit has been clear that notice of possible sanctions under 28 U.S.C. § 1927 or a court's inherent power to sanction is not the same as notice under Rule 9011. Fellheimer at 1225.

Finally, the Court considered sanctions under 11 U.S.C. § 105(a). Pursuant to that section a court has the discretion to "fashion an appropriate sanction for conduct which abuses the judicial process," Chambers v. NASCO, Inc., 501 U.S. 32, 45 (1991), *reh'g denied*, 501 U.S. 1269. However, this is so only when attorney conduct runs afoul of specific provisions in the Bankruptcy Code. *See, e.g.*, Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 206 (1988); U.S. v. Sutton, 786 F.2d 1305, 1308 (5th Cir. 1986) ("[Section 105] does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity."). This power, like that awarded under 28 U.S.C. § 1927, requires a showing of bad faith by counsel before it is exercised. *See*, In Re Schaefer Salt Recovery, Inc., 542 F.3d 90, 101 (3d Cir. 2008); Fellheimer, Eichen & Braverman, P.C. v. Charter Technologies, Inc., 57 F.3d 1215, 1225 (3d Cir. 1995). Because the Court is unable to find on this record that the Ackerman Firm was acting in bad faith, sanctions under § 105 are not appropriate.

**Conclusion**

The Court shares the frustration Debtor's counsel feels regarding the manner in which the

Ackerman Firm comported itself here.[4] Although the conduct does not quite justify sanctions, EMC's counsel should take heed that similar conduct in the future accompanied by even the hint of bad faith or willful conduct will result in sanctions.

/s/ *Kathryn C. Ferguson*
KATHRYN C. FERGUSON
US Bankruptcy Judge

Dated: March 3, 2009

---

[4] It bears noting, however, that the $32,021.80 sanction sought by Debtor's counsel is grossly overinflated. While the multiple appearances may have been occasioned solely by the manner in which EMC's counsel presented its case, Debtors counsel would have had to deal with those same issues if they had been properly and timely presented. The Court will rule separately on the reasonableness of those fees in the context of a fee application. It is also worth noting that had Debtor's counsel been able to explain at the first hearing the claim amount he was asking the Court to put in an order, the number of appearances would have been extremely limited.